MICHAEL J. McCUE (Nevada Bar #6055)
LEWIS AND ROCA LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada 89169
Tel: (702) 949-8200
Fax: (702) 949-8398

Attorneys for Plaintiff
Ramparts, Inc.

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| RAMPARTS, INC., a Nevada corporation, | Case No.: |
|---|---|
| Plaintiff, | COMPLAINT |
| vs. | |
| THOMAS D. WELDON, an individual, | |
| Defendant. | |

Plaintiff Ramparts, Inc. dba Luxor Las Vegas, for its complaint against Defendant Thomas D. Weldon, alleges as follows:

## NATURE OF THE CASE

Plaintiff seeks a declaratory judgment that its use of the LIQUIDITY mark for a bar/cocktail lounge in Las Vegas does not violate Defendant's rights in the LIQUIDITY mark for use in connection with red wine. Plaintiff also asserts claims for false and fraudulent registration of a trademark and promissory estoppel.

## JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Jurisdiction is also proper under 28 U.S.C. §1332(a), because there is complete diversity of citizenship between the parties and the amount in controversy in this action exceeds $75,000, exclusive of costs and interest.

2. Plaintiff Ramparts, Inc. is a corporation formed under the laws of the State of Nevada with its principal place of business in Las Vegas, Nevada. Ramparts owns and operates the Luxor, a resort hotel and casino on the Las Vegas Strip. The Luxor property includes a hotel, casino, attractions, shows, restaurants, nightclubs, bars, and lounges.

3. Upon information and belief, Defendant Thomas D. Weldon is an individual residing in Fernandina Beach, Florida.

4. This Court has specific jurisdiction over Weldon based on the facts that: (1) Weldon expressly aimed his conduct at Ramparts in the State of Nevada knowing that such conduct would cause injury to Ramparts in the State of Nevada; and (2) Weldon, through counsel, has engaged in extensive contract negotiations including making promises inducing reliance by with Luxor in the State of Nevada. Luxor's claims arise out of Weldon's contacts with the State of Nevada.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). Venue lies in the unofficial Southern division of this Court.

## FACTUAL ALLEGATIONS

6. On April 29, 2006, Weldon filed an intent-to-use U.S. trademark application (Serial No. 78/872841) for LIQUIDITY for use in connection with red wine in International Class 33.

7. On May 16, 2006, Luxor filed an intent-to-use U.S. trademark application (Serial No. 78/885104) for LIQUIDITY for bar services in International Class 41.

8. On December 5, 2006, Luxor filed a request for an extension of time to oppose Weldon's registration of the LIQUIDITY mark.

9. Beginning in January 2007 and continuing until June 2007, Luxor and Weldon engaged in extensive negotiations of a concurrent use agreement of the LIQUIDITY mark for their respective services. In reliance on Weldon's representations that he agreed to Luxor's concurrent use of the LIQUIDITY mark, Luxor did not file an opposition to Weldon's application to register the LIQUIDITY mark.

10. Luxor and Weldon reached an oral agreement in principle by which Weldon would use the LIQUIDITY mark for red wine and Luxor would use the LIQUIDITY mark for bar and lounge services.

11. The parties agreed that there is no likelihood of confusion between the parties' respective uses of the LIQUIDITY mark, because of the differences in the uses of the mark, the differences between the goods and services offered by the parties, the differences between the geographic markets, and the differences in the channels of trade.

12. After Luxor addressed Weldon's changes and provided the final version of the agreement for execution by Weldon, on or about June 17, 2007, Weldon indicated that he would not sign the agreement.

13. In response, on June 18, 2007, Luxor informed Weldon that it had relied on Weldon's agreement to enter into a concurrent use agreement in continuing to expend money in proceeding to use the LIQUIDITY mark and in foregoing its opposition to Weldon's registration of the LIQUIDITY mark. Luxor also asked Weldon to identify the terms of the concurrent use agreement that were apparently not acceptable to Weldon. Luxor also indicated that it was ready, willing, and able to perform the agreement. Weldon did not respond.

14. In continued reliance on Weldon's representations regarding Luxor's concurrent use of the LIQUIDITY mark, Luxor continued to expend money in completing the build out of the premises for the LIQUIDITY venue.

15. On December 26, 2007, Luxor opened the LIQUIDITY bar/lounge venue in the center of the casino floor at the Luxor. The opening of the LIQUIDITY venue was widely reported. Again, Weldon remained silent.

16. On April 29, 2008, the United States Patent and Trademark Office issued U.S. registration number 3,420,502 for the LIQUIDITY mark for red wine to Weldon. The registration was based on Weldon's statement of use, dated December 2007, in which he claimed that he first used the LIQUIDITY mark in commerce in connection with red wine at least as early as August 2006. Upon information and belief, at the time that he filed the statement of use, Weldon had not used the LIQUIDITY mark in commerce in connection with red wine and he knew that his

statement was false. Upon information and belief, a private club known as The Napa Valley Reserve created a private label wine using the LIQUIDITY mark for the Weldon Family Estate. Upon information and belief, The Napa Valley Reserve provided the wine for private use but the wine was not sold or offered for sale in commerce.

17. After issuance of his trademark registration for the LIQUIDITY mark on April 29, 2008, Weldon remained silent. Weldon did not object to Luxor's use of the LIQUIDITY mark.

18. On July 23, 2009, Luxor filed trademark applications for: (1) LIQUIDITY stylized for restaurant and bar services in International Class 43; and (2) LIQUIDITY stylized for cocktail lounge and nightclub services in International Class 41.

19. On September 30, 2009, Luxor filed a petition to cancel Weldon's registration for the LIQUIDITY mark on the grounds that Weldon had not used the mark for red wine in commerce.

20. On November 9, 2009, Weldon answered the notice of opposition denying that he had not used the LIQUIDITY mark in commerce.

21. On February 25, 2010, Weldon sent a letter to Luxor. For the first time, Weldon objected to Luxor's use of the LIQUIDITY mark and demanded that Luxor "cease and desist from using any and all use [sic] of LIQUIDITY on websites or other marketing materials, and consider another non-confusingly similar name."

22. Upon information and belief, Weldon has not used the LIQUIDITY mark in commerce for red wine.

23. Upon information and belief, Weldon had not used the LIQUIDITY mark in commerce in connection with red wine as claimed by Weldon in his statement of use.

24. Upon information and belief, Weldon intentionally or recklessly made false material statements to the United States Patent and Trademark Office to obtain his registration for the LIQUIDITY mark.

25. Upon information and belief, Luxor's use of the LIQUIDITY mark for a bar/lounge inside the Luxor resort and casino is not likely to cause confusion among consumers as to the

1  source or origin of Luxor's services, as to an affiliation, relationship, or connection between Luxor
2  and Weldon, or as to Weldon's sponsorship or approval of Luxor's services.

### COUNT I
### (Declaratory Judgment under 28 U.S.C. § 2201)

26. Luxor incorporates the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

27. An actual case and controversy exists between Luxor and Weldon.

28. There is an adversarial conflict between Luxor and Weldon.

29. Luxor has a reasonable apprehension of litigation.

30. This controversy is ripe for adjudication.

### COUNT II
### (False or Fraudulent Registration Under 15 U.S.C. § 1120)

31. Luxor incorporates the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

32. Weldon procured registration of the LIQUIDITY mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means.

33. Luxor has suffered injury and damages as the result of Weldon's conduct.

### COUNT III
### (Promissory Estoppel)

34. Luxor incorporates the allegations set forth in each of the preceding paragraphs as if fully set forth herein.

35. Weldon was apprised of the true facts.

36. Weldon knew or had reason to believe that Luxor would act on his conduct or promises.

37. Luxor was ignorant of the true state of facts.

38. Luxor relied to its detriment on the conduct or promises of Weldon.

Lewis and Roca LLP
3993 Howard Hughes Parkway
Suite 600
Las Vegas, Nevada 89109

527949.1

## **PRAYER FOR RELIEF**

WHEREFORE, Luxor respectfully requests that the Court:

A. Enter a declaratory judgment that: (1) Luxor has not infringed or otherwise violated any rights of Weldon arising from or relating to Luxor's use of the LIQUIDITY mark; and (2) Weldon's trademark claims are barred based on estoppel, waiver, or acquiescence.

B. Entering judgment in favor of Luxor on all claims and ordering the United States Patent and Trademark Office to cancel U.S. Registration No. 3,420,502.

C. Award damages to Luxor in an amount to be proven at trial.

D. Grant such other and further relief as the Court deems proper and just.

DATED this 26th day of March, 2010.

LEWIS AND ROCA LLP

/s/ Michael J. McCue

MICHAEL J. McCUE (Nevada Bar #6055)
3993 Howard Hughes Parkway, Suite 600
Las Vegas, Nevada  89169
Tel: (702) 949-8224
Fax: (702) 949-8363

Attorneys for Plaintiff
Ramparts, Inc.